UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MERVIN GALE RHODES,

      Petitioner,

v.                                  Case No. 3:20-cv-19-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner Mervin Gale Rhodes, a former inmate of the Florida penal system,[1] initiated this action on January 8, 2020, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] Rhodes proceeds on an amended petition (Amended Petition; Doc. 6), with exhibits, Docs. 6-1 through 6-12, filed on March 12, 2020. In the Amended Petition, Rhodes challenges a 2016 state court (Duval County, Florida) judgment of conviction for grand theft and resisting while committing theft. He raises fifteen grounds

_____

[1] The Florida Department of Corrections' (FDOC) website shows Rhodes was released from FDOC custody on April 17, 2021. See Offender Search, Florida Department of Corrections, (last updated April 17, 2021).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

for relief. See Amended Petition at 4-40. Respondents submitted a memorandum in opposition to the Petition. See Response (Doc. 14). They also submitted exhibits. See Docs. 14-1 through 14-16. Rhodes filed briefs in reply. See Reply (Doc. 15); Supplemental Reply (Doc. 16). He also submitted exhibits. See Docs. 15-1 through 15-2; 16-1 through 16-5. Rhodes's Amended Petition is ripe for review.

## II. Relevant Procedural History

On December 2, 2014, the State of Florida charged Rhodes by information with grand theft (count one) and resisting while committing theft, transit fare evasion, or trespass (count two). Doc. 14-1 at 56. Rhodes, with the assistance of counsel, proceeded to a trial on July 8, 2015. The trial court declared a mistrial on that same day because witness testimony about Rhodes's prior bad acts violated a motion in limine. Doc. 14-3 at 150, 153. Following another trial on December 16, 2015, where Rhodes had the benefit of counsel, the trial court declared a mistrial when the jury could not reach unanimous verdicts. Id. at 429. At another trial, Rhodes proceeded pro se, and on September 7, 2016, a jury found him guilty as to both counts.[3] Doc. 14-1 at 408-

---

[3] Judge Mark Hulsey presided over the July 8th and December 16th trials. Doc. 14-1 at 303-04. After Judge Hulsey recused himself, Judge Steven Whittington presided over the September 7th trial. Id.

09. On November 2, 2016, the trial court sentenced Rhodes to a six-year term of imprisonment for count one and a concurrent three-hundred-and-sixty-five-day term of imprisonment for count two. Doc. 14-2 at 62-68. The court also adjudicated Rhodes to be a habitual felony offender. Id. at 69.

On direct appeal, Rhodes, through counsel, filed an initial brief, arguing that the trial court erred when it refused to instruct the jury on the defense of abandonment. Doc. 14-6. The State filed an answer brief. Doc. 14-7. Rhodes filed a reply. Doc. 14-8. The First DCA per curiam affirmed Rhodes's convictions and sentences without a written opinion on February 22, 2018, Doc. 14-9 at 3, and issued the mandate on March 15, 2018, id. at 2.

On July 31, 2018, Rhodes filed a pro se amended state petition for writ of habeas corpus (State Petition), raising twelve grounds of ineffective assistance of appellate counsel. Doc. 14-10. Rhodes alleged appellate counsel was ineffective when he failed to argue: the State presented insufficient evidence (ground one);[4] the trial court erred when it did not conduct Nelson[5]

---

[4] In this Order, the Court discusses only the claims relevant to the instant Amended Petition.

[5] In Nelson v. State, 274 So. 2d 256, 258 (Fla. 4th DCA 1973), the appellate court determined that "where a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge." If

or <u>Faretta</u>[6] inquiries before his July 8th and December 16th trials (ground three); the prosecutor made improper remarks during closing arguments (ground four); the trial court erred when it denied his motion to suppress (ground seven); and the trial court erred when it denied his request to proffer questions to a State witness (ground eleven). <u>Id.</u> The State submitted a response, Doc. 14-11, and Rhodes replied, Doc. 14-12. The First DCA denied the State Petition on the merits on December 6, 2019. Doc. 14-13.

On March 26, 2018, Rhodes filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Doc. 14-14 at 6-41. He filed an amended Rule 3.850 motion on April 16, 2018, <u>id.</u> at 44-80, and a motion to supplement his amended Rule 3.850 motion on May 7, 2018, <u>id.</u> at 114-20. On July 16, 2019, the postconviction court dismissed Rhodes's motions and granted him leave to amend. <u>Id.</u> at 127-28. Rhodes filed an amended Rule 3.850 motion (Rule 3.850 Motion) on December 18, 2018, raising eight grounds for relief. <u>Id.</u> at 163-99. He also filed a motion to supplement (Motion to Supplement) (collectively Motions) on December 3, 2018, raising a ninth

---

reasonable cause exists to find counsel is ineffective, the trial court should make a finding to that effect and appoint a substitute attorney. <u>Id.</u> at 259.

[6] <u>Faretta v. California</u>, 422 U.S. 806, 807 (1975) (holding that a criminal defendant has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so).

ground for relief. Id. at 159-62. In the Motions, Rhodes alleged in part: the trial court did not have jurisdiction to impose the convictions and sentences (ground one), and trial counsel was ineffective when he failed to request Nelson or Faretta inquiries (ground two). Id. at 170-76. On February 20, 2019, the postconviction court summarily denied relief. Id. at 218-44. The First DCA per curiam affirmed the denial of relief without a written opinion on February 11, 2020, Doc. 14-16 at 3, and issued the mandate on March 10, 2020, id. at 2.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the

5

applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Rhodes's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1),

8

> which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[7] <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility

---

[7] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

10

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. See Tuomi v. Sec'y,

<u>Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020); <u>Philmore v. McNeil</u>, 575

F.3d 1251, 1264 (11th Cir. 2009). The Eleventh Circuit has instructed:

> In assessing an appellate attorney's performance, we are mindful that "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." <u>Id.</u> at 1130-31.[8] Rather, an effective attorney will weed out weaker arguments, even though they may have merit. <u>See id.</u> at 1131. In order to establish prejudice, we must first review the merits of the omitted claim. <u>See id.</u> at 1132. Counsel's performance will be deemed prejudicial if we find that "the neglected claim would have a reasonable probability of success on appeal." <u>Id.</u>

<u>Philmore</u>, 575 F.3d at 1264. Thus, appellate counsel's performance is

prejudicial if the omitted claim would have a reasonable probability of success

on appeal. <u>Id.</u> at 1265.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that

---

[8] <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir. 1991).

> determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Grounds One, Two, and Three

Respondents argue that in Grounds One, Two, and Three, Rhodes alleges variations of the same underlying sufficiency of the evidence claim. Response at 26. They contend Rhodes exhausted his state court remedies by presenting similar arguments in grounds one and four of his State Petition. <u>Id.</u> at 27. Based on a review of the pleadings, the Court finds that while Rhodes

challenges the sufficiency of the evidence in Grounds One, Two, and Three, he presents distinct claims for relief. Therefore, the Court will determine individually whether Rhodes exhausted the claims.

### 1. Ground One

As Ground One, Rhodes alleges he is "actually innocent" of grand theft and resisting while committing theft. Amended Petition at 4. He contends that the surveillance footage from Belk shows that he did not conceal any merchandise or exit the store. Id. at 5. According to Rhodes, the lack of evidence supporting his convictions necessitates his immediate release from custody. Id. at 6.

The record demonstrates Rhodes did not present a similar claim on direct appeal, in his State Petition, or in his Rule 3.850 Motion. Docs. 14-6; 14-10; 14-14 at 159-99. Therefore, he did not complete the state court process, and the claim is not exhausted. See Boerckel, 526 U.S. at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). Because any future attempt to exhaust this claim would be futile, it is procedurally defaulted. In the Amended Petition, Rhodes appears to argue

ineffective assistance of appellate counsel as cause to overcome his failure to exhaust. Amended Petition at 6.

The Eleventh Circuit Court of Appeals has stated:

> A showing of ineffective assistance of appellate counsel in failing to raise a claim on direct appeal can constitute "cause" so long as the ineffective assistance "occur[red] during a stage when a petitioner had a constitutional right to counsel," Payne v. Allen, 539 F.3d 1297, 1314 (11th Cir. 2008), and the ineffective-assistance claim itself is "both exhausted and not procedurally defaulted," Ward,[9] 592 F.3d at 1157 (citing Hill v. Jones, 81 F.3d 1015, 1031 (11th Cir. 1996)). . . .
>
> . . . .
>
> "[T]o determine cause and prejudice, we must ascertain whether [petitioner] has shown ineffective appellate counsel in not timely raising" the procedurally defaulted claims, and "to determine whether [petitioner] has shown ineffective appellate counsel, we must determine whether [petitioner] has shown underlying meritorious ... claims." Id.;[10] see also Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (holding that "because there is so little merit to the [defaulted] claim, [the petitioner] cannot demonstrate that his appellate attorneys were ineffective by failing to raise it on direct appeal"). As with any ineffective-assistance claim, the Supreme Court's decision in Strickland governs. Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (stating that Strickland applies to ineffective-assistance-of-appellate-counsel claims); see

---

[9] Ward v. Hall, 592 F.3d 1144 (11th Cir. 2010).

[10] Payne, 539 F.3d at 1314.

> also <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451, 120
> S.Ct. 1587, 146 L.Ed.2d 518 (2000) (stating that, while
> "counsel's ineffectiveness in failing properly to
> preserve the claim for review in state court will
> suffice" as cause, "the assistance must have been so
> ineffective as to violate the Federal Constitution"). We
> have acknowledged that "[a]n attorney is not required
> under the Constitution or the <u>Strickland</u> standards to
> raise every non-frivolous issue on appeal," and that
> "there can be no showing of actual prejudice from an
> appellate attorney's failure to raise a meritless claim."
> <u>Brown</u>, 720 F.3d at 1335.

<u>Sealey v. Warden, Ga. Diagnostic Prison</u>, 954 F.3d 1338, 1365-66 (11th Cir. 2020), <u>cert. denied sub nom.</u> <u>Sealey v. Ford</u>, 141 S. Ct. 2469 (2021). Here, Rhodes had a constitutional right to counsel on direct appeal of his state convictions and sentences, and he properly exhausted a claim that appellate counsel was ineffective when he failed to challenge the sufficiency of the evidence on direct appeal.[11] Rhodes raised a substantially similar claim in his State Petition, Doc. 14-10 at 4-8, and the First DCA denied Rhodes's petition on the merits, Doc. 14-13 at 2. Therefore, the Court must consider whether the underlying claim has merit in order to determine cause and prejudice. For the reasons discussed in Ground Three, the Court finds that the underlying claim does not have merit and Rhodes does not demonstrate cause or prejudice to

_____

[11] Rhodes raises this ineffective assistance of appellate counsel claim as Ground Three of his Amended Petition.

16

overcome his failure to exhaust. Accordingly, Rhodes is not entitled to federal habeas relief on the claim in Ground One.

## 2. Ground Two

Next, Rhodes argues that the trial court fundamentally erred when it allowed the State to introduce evidence of the value of the merchandise. Amended Petition at 7. According to Rhodes, no foundation existed for the admission of such evidence because he did not conceal the merchandise or exit Belk with it, and therefore, "no merchandise was stolen." Id. at 7-8 (emphasis omitted).

Rhodes represents in the Amended Petition that he raised a similar claim in his Rule 3.850 Motion. Amended Petition at 8-9. However, the record demonstrates Rhodes did not present a similar claim in his Rule 3.850 Motion, in his State Petition, or on direct appeal. Docs. 14-6; 14-10; 14-14 at 159-99. Therefore, he did not complete the state court process, and the claim is not exhausted. See Boerckel, 526 U.S. at 845. Because any future attempt to exhaust this claim would be futile, it is procedurally defaulted. Rhodes has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. Accordingly, the claim for relief in the Ground Two is due to be denied because Rhodes failed to exhaust it.

17

Even assuming Rhodes exhausted the claim, he would not be entitled to relief. The record reflects that Yvonne Jeffords, a Belk loss prevention manager, testified that as she monitored the surveillance video, Rhodes placed the shirts that he attempted to take out of Belk on a table after two loss prevention employees identified themselves. Doc. 14-5 at 324. She then collected the shirts and made a report of their prices. Id. at 325. James Leshyn, a Belk loss prevention employee, helped Jeffords compile the report. Id. at 349. To establish third-degree grand theft, the State had to prove the value of the property was $300 or more, but less than $5,000. Fla. Stat. § 812.014(2)(c)1 (2014). Therefore, the trial court did not err when it allowed the State to admit evidence of the merchandise's value. To the extent Rhodes challenges the sufficiency of the evidence supporting his conviction, his claim also does not have merit based on the evidence detailed in the analysis that follows on Ground Three. Therefore, Rhodes is not entitled to federal habeas relief on the claim in Ground Two.

### 3. Ground Three

In Ground Three, Rhodes contends appellate counsel was ineffective when he failed to challenge sufficiency of the evidence. Amended Petition at 9. Rhodes maintains that if appellate counsel had raised such a claim, the

appellate court would have granted relief because the trial evidence demonstrated that Rhodes did not commit theft because he did not conceal the merchandise or remove it from Belk. Id. at 9-10.

Rhodes raised a substantially similar claim as ground one of his State Petition, Doc. 14-10 at 4-8, and the First DCA denied relief on the merits, Doc. 14-13 at 2. To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Rhodes is not entitled to relief on the basis of the claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, the claim does not have merit. Rhodes takes particular issue with the absence of evidence that he concealed merchandise or removed it from the store. However, pursuant to Florida law, grand theft requires "knowingly obtain[ing] or us[ing], or endeavor[ing] to obtain or use, the

19

property of another with intent to, either temporarily or permanently . . .
deprive the other person of a right to the property or a benefit from the
property." Fla. Stat. § 812.014(1)(a) (2014) (emphasis added). Therefore, grand
theft does not require proof that an individual exited a store with merchandise.
And while a conviction for grand theft does not require proof that the defendant
concealed or attempted to conceal anything, concealment may constitute
evidence of felonious intent.[12]

On review of the record, the Court finds appellate counsel was not
ineffective when he failed to bring the claim because sufficient evidence
supported Rhodes's conviction. During trial, the State argued that Rhodes
committed grand theft when he attempted to take men's Polo shirts from Belk.
Three Belk loss prevention agents testified as State witnesses. According to
their testimony, Rhodes initially entered Belk wearing a large, floppy hat that
concealed his face. Doc. 14-5 at 252, 343. He looked around the men's Polo
department and exited the store into the mall. Id. at 252-53. Rhodes then
reentered Belk without a hat; he now wore large sunglasses. Id. at 253, 328,
344. He began to grab shirts without regard to their sizes from the Polo

---

[12] See Maddox v. State, 38 So. 2d 58, 59 (Fla. 1948); Ginn v. State, 26 So. 3d
706, 712 (Fla. 2d DCA 2010).

department. Id. at 255-56, 328, 344, 353. Rhodes then walked through the clothes racks along the walkway to the exit, veered towards the door sensors, and set off the sensors. Id. at 257-58. He walked farther into the store and entered a dressing room for approximately six seconds. Id. at 258. After he left the dressing room, Rhodes attempted to exit the store, walking straight down the walkway to the exit, and setting off the sensors. Id. at 258-59, 276. Two loss prevention agents identified themselves, and they asked Rhodes to come back into Belk. Id. at 260, 346. Rhodes stated he would put the shirts on a table and proceeded to do so. Id. at 260, 348. The agents then asked Rhodes to come with them to the loss prevention office inside Belk. Id. at 262, 349. Rhodes ran from the agents and into a plexiglass wall. Id.

Testimony established that Rhodes had sixteen shirts, ranging in size from small to "XX large," that cost a total of $1,431. Id. at 327, 351. Officer Bryan Kelly recovered a black trash bag and $7 or $8 from Rhodes's pockets. Id. at 358-59. Officer Kelly testified that Rhodes stated, "I know what I did was wrong." Id. at 361. The State also submitted the surveillance video of the incident as evidence. Id. at 216-17, 253-54. Based on the above, appellate counsel was not ineffective when he failed to raise a meritless claim that the State presented insufficient evidence. See Sealey, 954 F.3d at 1367 (finding

appellate counsel was not ineffective for failing to raise a claim that did not have merit). Accordingly, Rhodes is not entitled to federal habeas relief on the claim in Ground Three.

## B. Ground Four

Rhodes alleges appellate counsel was ineffective when he failed to argue that the trial court erroneously determined Belk's loss prevention agents and law enforcement had probable cause to detain him and denied his motion for an adversary preliminary hearing and motion to suppress. Amended Petition at 11. Rhodes argues that the loss prevention agents and law enforcement did not have probable cause to arrest him because, in his view, he did not commit theft because he did not conceal merchandise or exit Belk with merchandise. Id. at 11-12.

Rhodes raised a substantially similar claim as ground seven of his State Petition, Doc. 14-10 at 26-31, and the First DCA denied the petition, Doc. 14-13 at 2. To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve

an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Rhodes is not entitled to relief on the basis of the claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, the claim is meritless. During an adversary preliminary hearing, Officer Kelly testified that he viewed the surveillance video, spoke with the loss prevention agents, and interviewed Rhodes. Doc. 14-4 at 143. Rhodes admitted to Officer Kelly that he had a family and "took the stuff." Id. at 143. Based on such testimony, the trial court did not err when it determined Officer Kelly had probable cause to arrest Rhodes. To the extent Rhodes attempts to argue that Belk's loss prevention agents did not have probable cause to detain him, he does not state a claim of constitutional dimension. See United States v. Jacobsen, 466 U.S 109, 113 (1984) (noting the Fourth Amendment does not apply to searches and seizures made by private actors not acting as agents of the government or with the participation or knowledge of a government official). Appellate counsel was not deficient when he failed to raise meritless claims. See Sealey, 954 F.3d at 1367. Therefore, Rhodes is not entitled to federal habeas relief on the claim in Ground Four.

### C. Ground Five

Next, Rhodes argues that appellate counsel was ineffective when he failed to assert the trial court erred by overruling Rhodes's objection to the prosecutor's remark during closing arguments. Amended Petition at 14. The prosecutor stated that Rhodes "walked beyond all points of sale" with merchandise. Id. Rhodes contends no evidence established that he walked beyond a point of sale. Id. at 15.

The record demonstrates Rhodes did not present a similar claim in his State Petition. Doc. 14-10. Therefore, he did not complete the state court process, and the claim is not exhausted. See Boerckel, 526 U.S. at 845. Because any future attempt to exhaust this claim would be futile, it is procedurally defaulted. Rhodes has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. Accordingly, the claim for relief in Ground Five is due to be denied because Rhodes failed to exhaust it.

Nevertheless, even if Rhodes properly exhausted the claim, it does not have merit. During closing argument, the prosecutor made the following comment:

> I want to talk briefly about the testimony of each of the witnesses, the four witnesses that you heard from today, beginning with James Lacey. He indicated that he first saw the defendant with a hat and then he

24

> really took notice of him when he came back into the store from the mall entrance wearing these black dark sunglasses from the in – from the inside. If he was wearing sunglasses coming from outside, people do that, but from the inside of the mall, that – that raises alarm in your head.
>
> Talk about the fact that the defendant removed 16 Polo shirts, that the defendant attempted three times to at least proceed toward the exit door. <u>The defendant walked beyond all points of sale. And that's key here. The points of sale in – what that means is that – physically the cash register. That's what a point of sale is. And there are no cash registers right by the exit door and there are no cash registers outside of the exit door. The defendant passed all points of sale when he was apprehended.</u>

Doc. 14-5 at 417-18 (emphasis added). Rhodes objected on the basis that the point of sale "was clearly not established when [he] questioned Mr. Lacey." <u>Id.</u> at 418. The trial court overruled Rhodes's objection, noting the prosecutor's comments amounted to argument. <u>Id.</u>

Based on the above, appellate counsel was not ineffective when he failed to raise the claim that the trial court erred by overruling Rhodes's objection because it did not have merit. <u>See</u> <u>Sealey</u>, 954 F.3d at 1367. "A prosecuting attorney may comment on the jury's duty to analyze and evaluate the evidence and state his or her contention relative to what conclusions may be drawn from the evidence." <u>Evans v. State</u> 838 So. 2d 1090, 1094 (Fla. 2002). Here, the

prosecutor made a reasonable argument as to the conclusions that the jury could reach from the witnesses' testimony and surveillance video.

Nevertheless, even assuming arguendo the prosecutor made an improper comment, it did not prejudice the defense. Before closing argument, the trial court advised the jury that closing arguments do not constitute evidence or instructions on the law. Doc. 14-5 at 406-07. The jury presumably followed the court's instructions. See Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 690 (11th Cir. 2005). Accordingly, Rhodes is not entitled to federal habeas relief on the claim in Ground Five.

### D. Ground Six

As Ground Six, Rhodes alleges the trial court denied him the right to represent himself and did not have jurisdiction to impose the convictions and sentences. Amended Petition at 17. Rhodes maintains that between April and August 2015, he made numerous requests to discharge court-appointed counsel and represent himself. Id. at 18. According to Rhodes, once he made an unequivocal request to discharge counsel in a motion filed on August 6, 2015, the trial court should have conducted a Faretta inquiry. Id. Rhodes argues that since the trial court did not consider the motion within thirty days, it lacked jurisdiction, thereby rendering "all order, judgments, decrees, and

26

rulings" null and void from that date. Id. He further contends that the trial court also did not address his pro se "Motion for Nelson and Faretta Hearing[s]," filed on June 17, 2015. Id.

Rhodes raised a similar claim in ground one of his Rule 3.850 Motion. Doc. 14-14 at 170-72. The postconviction court denied relief, stating in pertinent part:

> In Ground One, Defendant alleges that the circuit court lacked jurisdiction to impose the conviction and sentence. Defendant claims that he filed several requests to discharge counsel and represent himself, which were not addressed by the Court. Defendant also alleges that he filed a motion to disqualify Judge Mark Hulsey as well as another request to discharge counsel on August 6, 2015. He asserts that this motion to disqualify should have been addressed within thirty days. However, the motion was not addressed for ten months. After ten months of continuances and a second trial resulting in another mistrial, Defendant claims that Judge Hulsey granted him the right to self-representation and reassigned the case to a successor judge, Judge Steven Whittington. Defendant claims that this action was improper as Judge Hulsey had no authority over the case after he had failed to rule on the motion to disqualify within the applicable time period. Defendant claims that "all rulings, judgments, and orders rendered by this judge (Mark Hulsey) from August 6, 2015 and beyond are nullities," including the order transferring the case to Judge Whittington. Thus, he claims that Judge Whittington had no authority and lacked jurisdiction to enter the judgment and sentence in this case. Defendant alleges

that a lack of subject matter jurisdiction may be raised at any time.

Defendant's claim is without merit. Defendant is correct that a lack of subject matter jurisdiction may be raised at any time. See Davis,[13] 998 So. 2d at 1198. However, Defendant's claim does not allege facts that demonstrate that the Court lacked subject matter jurisdiction in this case. This Court notes that the Information,[], properly conferred subject matter jurisdiction upon the Circuit Court. See Black v. State, 819 So. 2d 208, 211 (Fla. 1st DCA 2002) ("[J]urisdiction is to be determined solely from the face of the information."); State v. Vazquez, 450 So. 2d 203, 204 (Fla. 1984) (same); McLean v. State, 2 So. 5 (Fla. 1887) (same); see also § 910.005, Fla. Stat. (2012) (discussing subject matter jurisdiction in Florida). Therefore, Defendant's claim presents an issue that could have been resolved on direct appeal and is not cognizable in a Rule 3.850 Motion. See Jenkins v. State, 794 So. 2d 654 (Fla. 2d DCA 2011).

Furthermore, even if Defendant's claim was not procedurally barred, he has not demonstrated that he is entitled to have this Court vacate the judgment and sentence. Defendant's claim of error is predicated on the Court's alleged failure to rule on his request to discharge counsel, which he claims would have resulted in the Court being required to consider his pro se motion to disqualify. In his "Request for Recusal of Judge and Dismissal of Court Appointed Counsel from the Office of the Public Defender 4th Judicial Circuit," filed on August 6, 2015, Defendant alleged that he had filed a "Notice of Intent to Sue" the Honorable Mark Hulsey, the Public Defender Matt Shirk, and his Assistant Public Defender Morgan Orender, which

---

[13] Davis v. State, 998 So. 2d 1196 (Fla. 1st DCA 2009).

created a conflict with the Public Defender's Office. However, such allegations do not provide a basis to discharge court-appointed counsel. <u>See</u> <u>Miller v. State</u>, 921 So. 2d 816, 819 (Fla. 2006) (holding that "the bare fact that [defendant] sued his lawyer" does not mandate a discharge of court-appointed counsel). Even if the Court had held a <u>Nelson</u> inquiry pursuant to his request to discharge counsel,[] Defendant has not demonstrated that the Court would have discharged counsel. Thus, Defendant has not shown that the Court would have been required to address his <u>pro se</u> motion to recuse. <u>See</u> <u>Ault v. State</u>, 53 So. 3d 175, 203 (Fla. 2010) (holding that a <u>pro se</u> motion to disqualify is a nullity unless adopted by defense counsel). Therefore, Defendant's claim that Judge Hulsey lost jurisdiction after failing to rule on his <u>pro se</u> motion within thirty days is without merit.

Moreover, Defendant has failed to demonstrate that he was prejudiced, where he concedes in his Amended Motion that the Court ultimately allowed him to proceed <u>pro se</u> and ordered a successor judge to be appointed prior to his final trial. In addition, Defendant's claim that the successor judge, Judge Whittington, did not have jurisdiction to enter the judgment and sentence in his case because Judge Hulsey lacked authority to transfer the case to him is without merit. <u>See</u> Fla. R. Jud. Admin. 2.330(j) ("If not ruled on within 30 days of service, the motion [to disqualify] shall be deemed granted and the moving party may seek <u>an order from the court directing the clerk to reassign the case</u>.") (emphasis added); <u>Robinson v. State</u>, 11 So. 3d 466 (Fla. 5th DCA 2009) (noting that the expiration of the thirty day time period for ruling on a motion to disqualify entitled defendant to an order from the court to reassign the case to a different judge). For all of the above reasons, Ground One is due to be denied.

Doc. 14-14 at 221-24 (footnote and record citation omitted). The First DCA affirmed the postconviction court's denial of relief. Doc. 14-16 at 3. The Court finds the instant claim is procedurally barred because Rhodes raised it in a procedurally incorrect manner. As noted by the postconviction court, Rhodes did not allege facts supporting a claim that the trial court lacked subject matter jurisdiction. Rather, he alleged facts supporting a claim that the trial court erred when it failed to comply with a procedural rule for timely ruling on a motion for disqualification. In turn, Rhodes raised a trial court error claim more appropriately brought on direct appeal. See Bruno v. State, 807 So. 2d 55, 63 (Fla. 2001) ("A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion. . . ."); Jenkins v. State, 794 So. 2d 654, 654 (Fla. 2d DCA 2001) (noting the court has held that whether "the trial court erred in denying defendant's request for a discharge of counsel by failing to follow the proper procedures as required by the case law could have been determined from the record on direct appeal") (quotation marks omitted). The procedural bar is regularly imposed and was not applied in an arbitrary manner. See Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179 (11th Cir. 2010) (recognizing "[t]here is no doubt that, under Florida law, a claim is procedurally barred from being raised on collateral review if it could have been,

but was not raised on direct appeal"). Rhodes has not shown either cause excusing the default or actual prejudice resulting from the bar.

Even assuming the claim is not procedurally barred, it does not have merit. The Eleventh Circuit has stated that "a trial court's obligations to conduct a <u>Faretta</u> hearing, at which a defendant is made aware of the dangers and disadvantages of self-representation, is triggered by the defendant's clear and unequivocal assertion of a desire to represent himself." <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1293 (11th Cir. 2011) (quotation marks and citations omitted). Additionally, even when a defendant requests to proceed pro se, the right may be waived through his subsequent conduct indicating his equivocation on the issue or abandonment of the request. <u>Brown v. Wainwright</u>, 665 F.2d 607, 611 (5th Cir. 1982).

The Court finds that the trial court did not deny Rhodes's right to self-representation. The record reflects that Rhodes filed a "Motion to Dismiss Counsel and Petition for Writ of Habeas Corpus" on April 3, 2015, in which he requested to discharge counsel but did not indicate any intention to proceed pro se. Doc. 14-1 at 82-85. Judge Hulsey held a hearing on the motion and conducted a <u>Nelson</u> inquiry. Doc. 14-4 at 25-57. Judge Hulsey found that counsel had not performed deficiently, but rather counsel and Rhodes had

competing perspectives on trial strategy. Id. at 43-44. Judge Hulsey stated that he would need to conduct a Faretta inquiry if Rhodes wanted to proceed pro se. Id. at 47. However, Rhodes decided he wanted to have a discussion with his attorney "[to] see if we can get on the same page." Id. at 52. Rhodes did not raise any concerns with counsel's performance or renew his request to proceed pro se at subsequent hearings on April 22, 2015, and April 27, 2015. Id. at 58-82.

At a pretrial hearing on June 17, 2015, Rhodes renewed his request to proceed pro se when he interrupted the trial court's proceedings and stated, "I'll represent myself." Id. at 86. Rhodes wanted counsel to investigate a potential witness; however, he did not want counsel to request a continuance even though trial was set for July 7, 2015. Id. at 89-93. Ultimately, Rhodes agreed to the continuance that defense counsel had requested and apologized for the interruption. Id. at 93.

On August 6, 2015, Rhodes filed a request to discharge the Public Defender's Office and for Judge Hulsey's recusal based on a civil action that he had filed against them. Doc. 14-1 at 226-27. He did not request to proceed pro se in the motion. Id. The trial court did not address the motion until June 6, 2016, when Judge Hulsey allowed Rhodes to proceed pro se and recused

32

himself. Doc. 14-2 at 374-75. Notably, Rhodes never brought the filing to the trial court's attention at pretrial hearings from August 11, 2015, to December 9, 2015. Doc. 14-4 at 107-89.

Rhodes made unequivocal requests to proceed pro se on April 3, 2015, and June 17, 2015, and the trial court addressed each of those requests. As to the latter request, while the trial court did not deny or grant it; Rhodes ultimately agreed that counsel should request a continuance and he did not renew his request to proceed pro se. Therefore, Rhodes abandoned the request. Moreover, his August 6, 2015 motion did not constitute a clear and unequivocal request to proceed pro se such that the trial court needed to conduct a <u>Faretta</u> inquiry because the motion only requested the discharge of his current counsel. Notably, rather than intending to proceed pro se, on October 19th, court-appointed counsel indicted Rhodes was actively seeking private counsel, <u>id.</u> at 163-64, and Rhodes confirmed the same under oath on December 7th, <u>id.</u> at 170-88. After he could not retain private counsel, Rhodes chose to proceed to trial on December 17th with the Public Defender's Office. Doc. 14-14 at 375-76. On this record, the Court does not find the trial court erred, especially when Rhodes ultimately represented himself at the trial that resulted in his convictions and sentences.

In addition, Rhodes contends that the trial court did not address his June 17, 2015 motion for a <u>Nelson</u> or <u>Faretta</u> inquiry. The record shows a "Motion for <u>Nelson</u> or <u>Faretta</u> Hearing to Dismiss Court[-]Appointed Counsel," with a certificate of service dated June 19, 2015. Doc. 14-1 at 306-09. It does not have a prison mail stamp or a clerk filing date; however, the state court docket shows a filing date of June 6, 2016. <u>Id.</u> at 8, 30. Even assuming Rhodes filed the motion on June 19, 2015, he did not raise the issue at the next pretrial hearing on June 25, 2015, and proceeded to trial with the assistance of counsel on July 8, 2015. Doc. 14-4 at 100-05. Accordingly, Rhodes waived his request when he proceeded to trial with the assistance of counsel. <u>See</u> <u>Raulerson v. Wainwright</u>, 732 F.2d 803, 809 (11th Cir. 1984) (finding that even if petitioner's letter "constituted a clear and unequivocal demand to represent himself, his agreement to proceed with the assistance of an attorney waived the original request").

To the extent Rhodes asserts the trial court did not have jurisdiction because it failed to rule on the August 6, 2015 motion to recuse, he appears to rely on Florida Rule of Judicial Administration 2.330(j) (2015) as the basis for his claim. Rule 2.330(j) provides that a judge shall rule on a motion for disqualification filed against him or her no later than thirty days after service

of the motion; if the judge does not deny the motion within that time period, the motion is deemed granted and the moving party may request an order from the court directing the clerk to reassign the case. Rhodes's claim, thus, presents a state law issue that is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.") (quotation marks and citation omitted). Rather, on federal habeas review, the Court must determine whether Rhodes's custody violates the United States Constitution or the laws or treaties of the United States. See 28 U.S.C. § 2254(a); Coleman v. Thompson, 501 U.S. 722, 730 (1991). Rhodes does not present such a claim to the extent he argues the trial court lacked jurisdiction based on its failure to comply with Florida law. Accordingly, Rhodes is not entitled to federal habeas relief on the claim in Ground Six.

### E. Ground Seven

In Ground Seven, Rhodes contends appellate counsel was ineffective when he failed to raise the claim asserted in Ground Six on direct appeal. Amended Petition at 19. Rhodes also asserts that he filed numerous pro se motions based on double jeopardy and the trial judge's ex parte contact with the Assistant State Attorney that the trial court did not consider because court-

appointed counsel represented him. Id. at 21. He maintains that, as a result, he could not properly preserve the issues for appeal. Id.

The record demonstrates that Rhodes raised a similar claim as ground three of his State Petition, Doc. 14-10 at 11-14, and the First DCA denied Rhodes's petition on the merits, Doc. 14-13 at 2. However, he did not bring any claim about the alleged ex parte conference. Doc. 14-10 at 11-14. Therefore, Rhodes did not exhaust that portion of the claim. Because any future attempt to exhaust it would be futile, it is procedurally defaulted. Rhodes has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. Accordingly, that portion of the claim for relief in Ground Seven is due to be denied because Rhodes failed to exhaust it.

To the extent that the First DCA decided the remainder of the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Therefore, Rhodes is not entitled to relief on the basis of the claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, it is meritless. For the reasons set forth in Ground Six, the trial court did not deny Rhodes the right to represent himself, and appellate counsel was not ineffective when he failed to raise a claim on that basis. See Sealey, 954 F.3d at 1367. Accordingly, Rhodes is not entitled to federal habeas relief on the claim in Ground Seven.

## F. Ground Eight

Next, Rhodes argues the successor judge, Judge Whittington, denied him due process when, in ruling on a motion to suppress, he considered testimony from the July 8th and December 16th trials presided over by Judge Hulsey. Amended Petition at 23. He alleges Judge Whittington could not rely on Judge Hulsey's assessment of the evidence and should have conducted a new hearing to properly determine the credibility of witnesses. Id.

Respondents contend that Rhodes failed to properly exhaust the instant claim because he did not raise it on direct appeal of his convictions and sentences. Response at 53. According to Respondents, Rhodes's failure to raise the issue properly in the procedural manner prescribed by Florida law bars the

issue from federal review. Id. They argue, to the extent Rhodes might assert he exhausted the claim in his State Petition, such an argument does not have merit. Id. Rhodes only referenced the issue as part of his claim that appellate counsel was ineffective when he failed to challenge the motion to suppress on other grounds, and therefore he did not exhaust the claim raised here. Id. Rhodes does not reply to Respondents' arguments. See generally Reply; Supplemental Reply.

The record reflects that Rhodes did not raise a similar claim on direct appeal. Doc. 14-6. In ground seven of his State Petition, he alleged that appellate counsel was ineffective when he failed to challenge the trial court's denial of the motion to suppress, arguing in pertinent part:

> Appellate counsel read and combed over this same information now before the court and rendered ineffective assistance of appellate counsel for failing to bring this issue to the appellate court in his Initial Brief in the proceedings.
>
> First and foremost, the trial [j]udge erred reversibly in considering and making credibility rulings on evidence and testimony of Petitioner's previous trials he did not hear testimony or preside in himself and no stipulation was made between the State and Petitioner to all such consideration. See[] Fratello v. State, 950 So. 2d 440 (Fla. 4th DCA 2007); McCloud v. State, 150 So. 3d 822, 823 (Fla. 1st DCA 2014).

Doc. 14-10 at 29 (emphasis added). While Rhodes referenced the trial court's failure to consider live testimony, he did not raise it as a deprivation of due process claim or even a general trial court error claim. See Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004) ("[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief."); Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (noting that to properly exhaust state remedies, "the petitioner must make the state court aware that the claims asserted present federal constitutional issues"). Therefore, the Court finds Rhodes did not fairly present his clam to the state courts and failed to exhaust it. Since future attempts to exhaust it would be futile, it is procedurally defaulted. Rhodes has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. Accordingly, the claim is due to be denied on that basis.

Even assuming Rhodes had properly exhausted the claim, he is not entitled to relief. At a pretrial hearing on August 25, 2016, Rhodes argued the merits of his motion to suppress, asserting that loss prevention agents did not have probable cause to detain him. Doc. 14-2 at 382-86. He emphasized the importance of the surveillance video to the trial court's resolution of his motion

to suppress. Id. at 384. Rhodes told the trial court: "I want to make one more point, look at the tape, you can just listen to me and make your decision." Id. Following the State's oral argument, the prosecutor requested that the trial court either make a ruling during trial based on witness testimony or review the surveillance video and transcripts of witness testimony from previous court proceedings. Id. at 387. The trial court decided it would review the transcripts and video, and Rhodes did not object. Id. at 387-88.

At a subsequent pretrial hearing on August 29, 2016, the trial court noted it had not ruled on Rhodes's motion to suppress, but that it had read the transcripts and watched the surveillance video and would prepare a written order. Doc. 14-4 at 204. Again, Rhodes did not object to the trial court's decision not to consider live testimony. Id. Before jury selection on September 6, 2016, the trial court repeated that it had reviewed the video and transcripts. Id. at 24-34. The court allowed Rhodes to make additional oral argument; however, Rhodes still did not object. Id. The trial court issued an oral ruling in addition to a written order. Id. at 34; Doc. 14-1 at 438.

Based on the record, the Court finds that the trial court did not violate Rhodes's right to due process when it considered transcripts and video evidence. Rhodes had ample opportunity to object or ask the trial court to

40

consider live witness testimony. He did not take such action. In his Amended Petition, Rhodes generally alleges that the trial court could not assess the weight of the evidence and the credibility of witnesses or resolve conflicts in the evidence. However, it is unclear what particular conflicts or credibility that the trial court had to assess, especially where Rhodes contended that his argument and the video sufficed to resolve the motion. Accordingly, Rhodes is not entitled to federal habeas relief on the claim in Ground Eight.

## G. Ground Nine

Rhodes asserts that appellate counsel was ineffective when he failed to raise the claim that the prosecutor made prejudicial remarks during closing arguments. Amended Petition at 24. According to Rhodes, the prosecutor stated that Rhodes attempted to leave the store with merchandise, but no evidence supported such a statement. Id. at 25.

Rhodes raised a substantially similar claim as ground four of his State Petition, Doc. 14-10 at 14-16, and the First DCA denied Rhodes's petition on the merits, Doc. 14-13 at 2. To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the

state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Rhodes is not entitled to relief on the basis of the claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Rhodes is not entitled to relief. The prosecutor's remark is as follows:

> And how do we know the defendant endeavored to obtain the property of Belk with the intent to deprive Belk of the property? Your common sense tells you that. There is no magic formula. It's your common sense. He has less than $10 on him, no other way to pay for the merchandise. You know, you don't once, once ever see him approach a cash register to pay for the items, once, to pay for the 16 shirts that he has into his arms. He has no money and he picks up or selects more than $1400 worth of merchant [sic] – of items of merchandise and the only common sense, reasonable logical conclusion that it – that you could come to is that he had the intent to steal it, and that, combined with the fact that he was stopped right before he exited the door, tells you that he had the intent to steal it, but for that loss prevention officer stopping him, he would have actually obtained that property, that's why in this case it's endeavored to obtain.

Doc. 14-5 at 411. Rhodes objected on the basis that no evidence demonstrated

42

that he attempted to leave the store. Id. at 412. The trial court overruled his objection. Id. The Court finds that the prosecutor's remark was a proper argument as to the logical inferences that the jury could draw from the evidence. See Dessaure v. State, 891 So. 2d 455, 468 (Fla. 2004) (noting that closing arguments allow the parties to argue all reasonable inferences that the jury may draw from the evidence). Appellate counsel was not deficient when he failed to bring a meritless claim. See Sealey, 954 F.3d at 1367. Accordingly, Rhodes is not entitled to federal habeas relief on the claim in Ground Nine.

## H. Ground Ten

As Ground Ten, Rhodes alleges that appellate counsel was ineffective when he failed to raise the claim that the trial court improperly denied Rhodes's proffer during cross-examination of a State's witness, James Lacey. Amended Petition at 27. Rhodes asked Lacey whether he saw Rhodes "steal anything." Id. He maintains the trial court erred when it sustained the State's objection to the question. Id. According to Rhodes, the trial court denied him the right to confrontation, as well as to a fair and impartial trial. Id. at 28.

Rhodes raised a substantially similar claim as ground eleven of his State Petition, Doc. 14-10 at 45-48, and the First DCA denied Rhodes's petition on the merits, Doc. 14-13 at 2. To the extent that the First DCA decided the claim

43

on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Rhodes is not entitled to relief on the basis of the claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, it does not have merit. Rhodes did not ask the trial court if he could proffer the testimony. Doc. 14-5 at 302. "In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." Tillman v. State, 471 So. 2d 32, 35 (Fla. 1985). As such, Rhodes did not preserve the issue for appellate counsel to present on direct appeal. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate

counsel, therefore, is not ineffective for failure to raise a meritless argument.").
Accordingly, Rhodes is not entitled to federal habeas relief on Ground Ten.

## I. Ground Eleven

In Ground Eleven, Rhodes argues appellate counsel was ineffective when
he failed to raise the claim that the State did not prove "the <u>corpus del[i]cti</u> of
the crime." Amended Petition at 29 (emphasis added). He contends the
evidence did not demonstrate he committed theft or resisting while committing
theft. <u>Id.</u> at 30. He further argues that the State erred by allowing Officer
Bryan Kelly to testify that Rhodes confessed "he knew what he did was wrong"
despite this lack of evidence. <u>Id.</u>

Rhodes raised a substantially similar claim as ground eight of his State
Petition, Doc. 14-10 at 31-35, and the First DCA denied Rhodes's petition on
the merits, Doc. 14-13 at 2. To the extent that the First DCA decided the claim
on the merits, the Court will address the claim in accordance with the
deferential standard for federal court review of state court adjudications. After
a review of the record and the applicable law, the Court concludes that the
state court's adjudication of the claim was not contrary to clearly established
federal law, did not involve an unreasonable application of clearly established
federal law, and was not based on an unreasonable determination of the facts

45

in light of the evidence presented in the state court proceedings. Therefore, Rhodes is not entitled to relief on the basis of the claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Rhodes is still not entitled to relief. The corpus delicti rule provides that before the State can introduce evidence of a confession, it must demonstrate a crime was committed. See Burks v. State, 613 So. 2d 441, 443 (Fla. 1993). "The State must prove the corpus delicti with either direct or circumstantial evidence." Acoff v. State, 180 So. 3d 185, 188 (Fla. 1st DCA 2015). Notably, to preserve a violation of the rule for appeal, the defense must make a contemporaneous objection. J.B. v. State, 705 So. 2d 1376, 1378 (Fla. 1998).

Here, Rhodes did not contemporaneously object to the admission of his confession. Doc. 14-5 at 356-61. Therefore, he did not preserve the alleged violation of the rule for appeal. Because Rhodes did not preserve the issue, appellate counsel could not raise it successfully as the admission of a confession without independent proof of the corpus delicti does not amount to fundamental error. See J.B., 705 So. 2d at 1379; Scott v. State, 147 So. 3d 5, 6 (Fla. 1st DCA 2013) (refusing to consider appellant's argument on appeal that the State introduced his incriminating statements without establishing the

46

corpus delicti because appellant did not contemporaneously object to its admission). Appellate counsel was not ineffective when he failed to raise an unpreserved issue that did not amount to fundamental error. See Diaz, 402 F.3d at 1142. Accordingly, Rhodes is not entitled to federal habeas relief on the claim in Ground Eleven.

## J. Ground Twelve

Rhodes alleges appellate counsel was ineffective when he failed to raise the claim that the trial court erred by denying Rhodes's motion to suppress his statement, "I know what I did was wrong." Amended Petition at 32. According to Rhodes, he remained silent after Officer Kelly read his Miranda[14] rights, but Officer Kelly continued to question him. Id. at 33. Rhodes argues the trial court should have suppressed his alleged statements made before and after Officer Kelly read the Miranda rights to him. Id.

Rhodes raised a substantially similar claim as ground seven of his State Petition, Doc. 14-10 at 26-31, and the First DCA denied Rhodes's petition on the merits, Doc. 14-13 at 2. To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After

---

[14] Miranda v. Arizona, 384 U.S. 436 (1966).

a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Rhodes is not entitled to relief on the basis of the claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Rhodes is still not entitled to relief. The Court initially notes that appellate counsel had no duty to raise every non-frivolous issue on appeal, and it was reasonable for counsel to weed out weaker arguments. See Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016). To overcome the presumption that appellate counsel was effective, Rhodes must demonstrate that appellate counsel ignored issues that were clearly stronger than those presented. See id. In addition, Rhodes must show a reasonable probability that, but for the deficient performance, the outcome of the appeal would have been different. See Black, 373 F.3d at 1142.

The trial court conducted a suppression hearing on September 7, 2016. Doc. 14-5 at 178. Officer Kelly testified that Rhodes did not make any statements until after Officer Kelly advised Rhodes of his Miranda rights. Id.

at 185-90. According to Officer Kelly, Rhodes stated he understood his rights and indicated that he wanted to speak with Officer Kelly. Id. at 187. Throughout Officer Kelly's testimony, the State played the surveillance video of Rhodes and Officer Kelly's conversation. Id. at 183-90. Rhodes did not call any witnesses. Id. at 197. The trial court found Officer Kelly to be credible and determined Rhodes voluntarily agreed to answer questions. Id. at 205. As such, it denied the motion to suppress. Id.

Pursuant to Florida law, the appellate court is required to defer to the trial court's findings of fact supported by competent, substantial evidence. State v. Dickey, 203 So. 3d 958, 961 (Fla. 1st DCA 2016). In determining which issues to pursue on appeal, appellate counsel may have strategically "weeded out" an argument about the motion to suppress as weaker than an argument about the trial court's failure to instruct the jury on an abandonment defense, the sole issue raised on appeal. See Philmore, 575 F.3d at 1264. Notably, while an appellate court will review the failure to give a requested instruction for an abuse of discretion, "[t]he trial court's discretion is limited because a criminal defendant is entitled to have the jury instructed on his theory of defense if there is any evidence to support the defense." Cannon v. State, 18 So. 3d 562, 564 (Fla. 1st DCA 2009) (emphasis added). Based on the record, the issue

49

regarding the admissibility of Rhodes's statement was not clearly stronger than the issue counsel presented. Accordingly, Rhodes is not entitled to relief on the claim raised in Ground Twelve.

## K. Ground Thirteen

In Ground Thirteen, Rhodes contends appellate counsel was ineffective when he failed to raise the claim that the trial court erred by denying Rhodes's motion for investigative fees. Amended Petition 34. According to Rhodes,  he filed a request for investigative fees and services, but the trial court denied the request because Rhodes needed to consult with the Justice Administrative Commission (JAC). Id. at 35. However, Rhodes asserts that as a pro se indigent litigant who had articulated a need for investigative services, he was entitled to those services and the trial court violated due process when it denied his request. Id.

The record demonstrates Rhodes never presented a similar claim in his State Petition. Doc. 14-10. Thus, Rhodes did not complete the state court process, and the claim is not exhausted. See Boerckel, 526 U.S. at 845. Because any future attempt to exhaust this claim would be futile, it is procedurally defaulted. Rhodes has alleged neither cause and prejudice nor a miscarriage of

justice to overcome his failure to exhaust. Accordingly, the claim for relief in Ground Thirteen is due to be denied because Rhodes failed to exhaust it.

Even assuming Rhodes properly exhausted the claim, it does not have merit. On August 3, 2016, Rhodes filed a pro se "Request for Investigative Fees," asking the trial court to provide him with fees for "an independent, uninterested investigative firm to investigate surveillance as well as other practices and policies of Belk." Doc. 14-1 at 344. At a pretrial hearing on that same day, the trial court denied the motion:

> THE COURT: . . . Now, as for the request for investigative fees, Mr. Rhodes, there is a motion that you need to file and serve it on the JAC. They have [to] give a response whether or not they approve spending the money that you're asking for. So I cannot grant this motion without that response from JAC. I'm not saying I won't, but you have to follow the proper procedures and it do[esn't] look[] like there is any response –
>
> THE DEFENDANT: Um, Your Honor.
>
> THE COURT: – from JAC to your motion.
>
> THE DEFENDANT: I thought can [sic] was the Department of Justice. That's my fault. I need the – some direction as to where I can file to the JAC.
>
> THE COURT: That's the thing, you're representing yourself. I can't – I wouldn't tell your Public Defender how to do his job –

THE DEFENDANT: I'll find it.

THE COURT: – because it's inappropriate. I'm not going to tell Mr. Johnston[15] how to do it. I can't tell you.

THE DEFENDANT: Yes, Your Honor. I'll find it.

Doc. 14-4 at 196-97.

Florida Statutes section 27.52(5) provides that an indigent defendant who is represented by private counsel not appointed by the court for a reasonable fee or on a pro bono basis, or who is proceeding pro se, "may move the court for a determination that he or she is indigent for costs and eligible for the provision of due process services . . . funded by the state." The defendant or counsel must file a written motion with the court and arrange for service of a copy on the JAC, which may contest any such motion and participate in a hearing on the motion. Fla. Stat. § 27.52(5)(a)-(b). Because JAC had standing to object to Rhodes's motion and Rhodes had not served it on JAC, the trial court properly denied the motion. Therefore, appellate counsel was not ineffective when he failed to raise a meritless claim of trial court error. See Sealey, 954 F.3d at 1367. Rhodes is not entitled to federal habeas relief on the claim in Ground Thirteen.

---

[15] Assistant State Attorney David Johnston.

## L. Ground Fourteen

Next, Rhodes alleges that Judge Hulsey's actions "tainted" the trial court proceedings. Amended Petition at 36. According to Rhodes, once he moved for Judge Hulsey's recusal on August 6, 2015, the trial court had thirty days to rule on the motion. Id. at 37. He contends that because the trial court did not rule on the motion within that time, Judge Hulsey's subsequent actions tainted the proceedings because he did not have "authority" in the case. Id. Rhodes also asserts Judge Hulsey engaged in misconduct when he had an ex parte communication with the Assistant State Attorney during the July 8th trial. Id.

The record establishes Rhodes did not present a similar claim in his Rule 3.850 Motion, in his State Petition, or on direct appeal. Docs. 14-6; 14-10; 14-14 at 159-99. Therefore, he did not complete the state court process, and the claim is not exhausted. See Boerckel, 526 U.S. at 845. Because any future attempt to exhaust this claim would be futile, it is procedurally defaulted. Rhodes has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. Accordingly, the claim for relief in Ground Fourteen is due to be denied on that basis.

Even assuming Rhodes properly exhausted the claim, he would not be entitled to relief. As previously noted, insofar as Rhodes argues Judge Hulsey

53

did not comply with Rule 3.220(j), his claim presents a state law issue that is not cognizable on federal habeas review. See Estelle, 502 U.S. at 67. To the extent Rhodes argues Judge Hulsey's failure to recuse himself after the July 8th trial violated his right to due process, such a claim does not have merit. The record reflects that while the Public Defender's Office represented Rhodes, he filed a pro se request for the recusal of Judge Hulsey on August 6, 2015, because he had filed "a notice of intent to sue" Judge Hulsey, Public Defender Matthew Shirk, and Assistant Public Defender Morgan Orender. Doc. 14-2 at 226-27. He never raised the alleged ex parte conversation as a basis for recusal either in the motion or during the July 8th trial. Judge Hulsey ultimately recused himself on June 6, 2016, after finding Rhodes competent to proceed pro se. Docs. 14-1 at 304; 14-2 at 365, 375-76. Rhodes proceeded to a trial with a successor judge, from which his convictions derived. Based on the record, the Court finds Judge Hulsey's failure to recuse himself after the July 8th trial did not result in a violation of due process. Accordingly, Rhodes is not entitled to federal habeas relief on the claim in Ground Fourteen.

## M. Ground Fifteen

Lastly, Rhodes argues the trial court erred when it refused to instruct the jury on the defense of abandonment. Amended Petition at 39. Rhodes

raised a substantially similar claim on direct appeal, Doc. 14-6; the State filed an answer brief, Doc. 14-7; and the First DCA per curiam affirmed Rhodes's convictions without a written opinion, Doc. 14-9 at 3. Respondents argue that Rhodes did not fairly present the federal nature of his claim to the state court on direct appeal. Response at 78-79. They assert he "did not make any concrete arguments based on [] federal constitutional provisions," but rather merely cited to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Id. at 79. According to Respondents, Rhodes therefore did not properly exhaust his claim. Id. at 80. Rhodes did not reply to the Respondents' arguments, but instead relied on his assertions in the Amended Petition. Reply at 12.

The Court finds Rhodes did not fairly present the federal nature of his claim to the state court. The record demonstrates that in his initial brief on direct appeal, Rhodes argued "reversible error occurred when the court abused its discretion by refusing to instruct the jury regarding [his] defense of abandonment." Doc. 14-6 at 16. Rhodes relied on Florida case law. Id. at 16-28. The final paragraph of his argument contained the sole reference to the United States Constitution or due process when Rhodes generally asserted that his "convictions and sentences violate his rights to due process and trial by jury."

55

Id. at 28. Rhodes's single string cite to the Fifth, Sixth, and Fourteenth Amendments amounts to no more than "makeshift needles in the haystack of the state court record." McNair v. Campbell, 416 F.3d 1291, 303 (11th Cir. 2005) (citation and quotations omitted). He did not alert the state court to the federal nature of his claim, which deprived the state court of a meaningful opportunity to review the claim. See Baldwin, 541 U.S. at 29. Since future attempts to exhaust the claim would be futile, it is procedurally defaulted. Rhodes has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. As such, Ground Fifteen is due to be denied.

Nevertheless, even if Rhodes properly exhausted the claim, he is still not entitled to relief. In its appellate brief, the State addressed the claim on the merits, Doc. 14-7; therefore, the appellate court may have affirmed Rhodes's convictions based on the State's argument. If the appellate court addressed the merits of the claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings. Therefore, Rhodes is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Rhodes's claim is without merit. "State court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review absent fundamental unfairness." Jones v. Kemp, 794 F.2d 1536, 1540 (11th Cir. 1986). On federal habeas review, to establish fundamental unfairness, the petitioner must demonstrate "the error 'so infected the entire trial that the resulting conviction violates due process.'" Jacobs v. Singletary, 952 F.2d 1282, 1290 (11th Cir. 1992) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson, 431 U.S. at 155. In such cases, the burden on petitioner is "especially heavy." Id.

Here, the omission of the abandonment instruction did not render the trial fundamentally unfair. Pursuant to Florida law, a defendant must voluntarily abandon his attempt to commit the offense to put forth such a defense. See Fla. Stat. § 774.04(5)(a); Harriman v. State, 174 So. 3d 1044, 1047 (Fla. 1st DCA 2015); Carroll v. State, 680 So. 2d 1065, 1066-67 (Fla. 3d DCA 1996). The trial court determined that no evidence supported issuance of the

instruction because Rhodes did not voluntarily abandon his attempt to take the clothes. Doc. 14-5 at 399-400. The record supports the trial court's conclusion. Rhodes did not stop walking towards the exit or place the clothes on the table until loss prevention agents identified themselves and asked him "to come back into the store" and to the loss prevention office. Id. at 259-60, 346-48. Rhodes did not present any contrary evidence. Therefore, the Court cannot conclude that the omission of the abandonment instruction rendered the trial fundamentally unfair and his convictions violate due process. As such, Rhodes is not entitled to federal habeas relief on Ground Fifteen.

### VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Rhodes seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Rhodes "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell,

537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Amended Petition (Doc. 6) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.      If Rhodes appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of November, 2022.

MARCIA MORALES HOWARD
United States District Judge

Jax-9 9/27
C:      Mervin Gale Rhodes
        Counsel of record